# JOHN H. GIRVAN AND ANOTHER v. COUNTY OF LE SUEUR AND OTHERS.

232 N. W. 2d 888.

August 22, 1975—No. 44997.

*Blethen, Ogle, Gage & Krause* and *Bailey W. Blethen,* for appellants.

*Warren Spannaus,* Attorney General, *Peter W. Sipkins,* Solicitor General, *Michael P. Berman* and *Paul A. Strandberg,* Special Assistant Attorneys General, and *Harry Christian,* County Attorney, for respondents.

Heard before Peterson, Todd, and Knutson, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

John H. Girvan and Alma R. Girvan appeal from a judgment dismissing an appeal from the Le Sueur County Planning and Zoning Commission's decision denying a request for a variance to construct a garage at their lakeshore home. The commission denied the application on the ground that the proposed garage projected closer to the road than the existing cabin. On appeal, the trial court found that a variance was required under the zoning ordinance, and that the commission had not acted in an arbitrary, capricious, or unreasonable manner in denying the variance. We reverse.

Appellants purchased their home at Lake Tetonka in Le Sueur County in September 1968. The home had been built in 1965, used as a lake cottage by the original owner, and converted to a year-round residence by appellants. The home is located on property now platted as Lot 6, Rearrangement of Raedeke's Lake Tetonka Subdivision No. 2. Appellants' property is included in and subject to restrictive covenants filed by the original developer at the time the first addition was platted.

In 1966, Le Sueur County adopted an interim zoning ordinance applicable to the property. The first zoning ordinance was adopted by the county in 1968 and substantially revised in 1971. The applicability and construction of the 1971 ordinance will determine the issues presented to this court.

In 1970, appellants applied to the planning and zoning commission for permission to construct a detached double garage between their home and the private roadway located to the north of their property. The garage was to be built within 18 feet of the road. This request was denied, but the commission suggested that appellants construct a single attached garage instead, which would allow for a 33-foot setback from the road. They appealed the commission's decision to the district court, but the matter was never tried on the merits and was dismissed during this litigation.

In June 1972, appellants again applied for a variance, seeking permission to construct a single attached garage to the north of their home, 37.5 feet from the south edge of the road. The road in question is a private, gravel road located within a 30-foot easement reserved and dedicated for utility and road purposes at the time of the filing of the plat to the first subdivision and also dedicated in the plat of the second subdivision. The road is 18 feet wide, and its southern edge extends along the southerly edge of the easement.

Appellants' application for a variance was considered along with four other applications of owners living within the subdivision for permission to construct garages. The applications had

the support of the majority of residents in the subdivision, but Robert Greising, who is the owner of Lot 7, Rearrangement of Raedeke's Lake Tetonka Subdivision No. 2, located immediately east of appellants' property, objected to the applications. The commission granted two of the applications and denied three, including appellants'. The applications that were approved proposed construction alongside existing buildings so that the garages would not extend any closer to the roadway than the existing structures. The other applications were denied on the basis that the proposed construction would bring the garages closer to the road than the existing structures. Appellants appealed to the district court from the denial of this application.

The evidence disclosed that the homes in these two subdivisions are located about the same distance from the lake and tend to follow its contour. The road runs in a straight line and is farthest from the lake at the west end of the first subdivision and the east end of the second subdivision. The road is closest to the lake at appellants' property and at property to the west. As a result, appellants' home is located 60 feet from the edge of the road, while other buildings are as close as 35 feet to the road. The planning commission took the position that the sight line of homes established the line of uniformity it wished to maintain. This approach ignored actual distances between the road and existing buildings.

The evidence further disclosed that appellants' property constitutes a nonconforming use under the 1971 zoning ordinance since it does not meet the area requirements for platted property. Section 3, subd. 2, of the zoning ordinance provides in part:

"* * * Any existing building or structure and any existing use of properties not in conformity with the regulations herein prescribed shall be regarded as non-conforming, but may be continued, extended or changed, subject to the special regulations herein provided with respect to non-conforming properties or uses."

The special regulations relating to nonconforming properties and uses are contained in Section 22 and provide in part:

"Subdivision 1.   Non-Conforming Buildings and Uses.

"1.   The lawful use of buildings or land existing at the effective date of this Ordinance which does not conform to the provisions of this Ordinance shall be discontinued within a reasonable period of amortization of the building; uses of buildings and land which become non-conforming by reason of a change in this Ordinance shall also be discontinued within a reasonable period of amortization of the building. * * *

"2.   Buildings found to be non-conforming only by reason of height, yard or area requirements shall be exempt from the provisions of Paragraph 1 of this Subdivision.

* * * * *

"Subdivision 6.   Residential Alterations.

"Alterations may be made to a residential building containing non-conforming residential units when they will improve the livability of such units, provided, however, that they do not increase the number of dwelling units in the building."

Appellants raise the following issues on appeal:

(1)   Whether construction of a garage upon property which is nonconforming to the area requirements of the zoning ordinance is permissible.

(2)   If such construction is permissible, whether the front yard or rear yard zoning provision is applicable.

(3)   If the planned construction will not comply with the appropriate zoning provision, whether the zoning commission acted arbitrarily, capriciously, or unreasonably in denying the requested variance.

■   Section 3, subd. 2, quoted above, provides for the continuation, extension, or change of nonconforming uses, *subject to* the special regulations set forth in Section 22. The only limitation on the kind of nonconforming use involved in this case is that "alterations" must improve the livability of the residential unit

without increasing the number of dwelling units in the building. Respondents argue that the addition of a garage is not an "alteration" and thus the proposed construction may not proceed. However, the addition of a garage is certainly an "extension" of the existing structure and a "continuation" of the existing use. Since the zoning ordinance allows *all* extensions and continuations subject only to the special regulations, and since the special regulations do not exclude the proposed construction, the construction of a garage upon nonconforming property is permissible.

■ We must next determine whether the front yard or rear yard provision of the ordinance is applicable to the planned construction. Appellants contend that their planned construction will satisfy the appropriate zoning provision and thus no variance is required.[1] In considering this question, we first point out that the trial court's finding that the proposed construction is within 33 feet of the edge of the road is erroneous. The evidence and exhibits clearly establish that the proposed construction is 37.5 feet from the edge of the road and 46.5 feet from the centerline of the road.

In considering whether the front yard or rear yard requirement governs the proposed construction, certain provisions of the zoning ordinance must be kept in mind. Section 4, subd. 2, entitled "Definitions", provides in part:

"Accessory Building—A subordinate building or portion of the main building which is located on the same lot as the main building and the use of which is clearly incidental to the use of the main building.

\* \* \* \* \*

"Building Set Back Line—A line within a lot or other parcel of land parallel to a public road or street or highway right-of-way

---

[1] Appellants did apply for a variance at the suggestion of the zoning administrator.

line defining a portion of the lot between said setback line and said right-of-way line on which buildings or structures may not be placed.

\* \* \* \* \*

"Depth of Rear Yard—The mean horizontal distance between the rear line of the building and the center line of an alley, where an alley exists, otherwise a rear lot line.

\* \* \* \* \*

"Garage, Private—A garage which is erected as an accessory building.

\* \* \* \* \*

"Lot Lines—The lines bounding a lot, as defined herein. \* \* \*

\* \* \* \* \*

"Setback—The minimum horizontal distance between a building and a highway or road center line.

\* \* \* \* \*

"Yard, Front—A yard extending across the front of the lot between the side yard lines and lying between the center line of the road or highway and the nearest line of the building.

"Yard, Rear—An open space unoccupied except for accessory buildings on the same lot with a building between the rear lines of the building and the rear line of the lot, for the full width of the lot."

Section 12, subd. 5, para. 2c, 4b, sets forth the front yard and rear yard regulations:

"There shall be a front yard setback of not less than fifty (50) feet from any other public or private road rights-of-way."

"\* \* \* [T]here shall be a rear yard having a depth of not less than forty (40) feet."

It is clear that these regulations imposed significantly different limitations on construction depending on whether the construction is considered as taking place in the front or rear yard. We note that the ordinance involved in the case at bar was adopted to apply to all property in the county and the definitions

of front and rear yard do not take into account the peculiar circumstance relating to lakeshore property in Minnesota.

As we implicitly recognized in State v. Callender, 293 Minn. 451, 197 N. W. 2d 216 (1972), land which borders on a lake cannot in all circumstances be constrained by the same regulations which apply to nonlakeshore property. All of the property owners who testified, except the objector, Greising, testified that they regarded the lakeside of their property as their front yard and had built and developed their property with this concept in mind. In addition, the restrictive covenants running with the land adopted December 3, 1960, by the original developer provide in part:

"1.   Each lot, and owner or owners thereof, or of any  lot, tract or parcel thereof shall have access to and from the same by the roadway and utility easement which runs and has been now, or will be, constructed from County Road #12 to and along the *rear* of all lots in said plat and subdivision, and such roadway is given and dedicated hereby for such purpose." (Italics supplied.)

Thus, the road is identified as being on the rear of appellants' lot, leaving the lakeside as the front of their lot. We are cognizant of the need to protect our lakes from improper development. However, zoning ordinances which purport to apply to established properties cannot be used to restructure development existing at and prior to the adoption of the ordinance.[2]

---

[2] Rules and regulations of the Department of Conservation permit the development of substandard lots. Minn. Reg. Cons 73(a)(3). The department's publication, Shoreland Management, Supplementary Report No. 2, published August 1971, contains the following language with respect to this regulation: "Any newly adopted zoning ordinance does not usually apply to existing uses. Lots which have been platted but not developed before the ordinance is enacted should be considered developable. A zoning ordinance cannot deprive a property owner of all reasonable uses of his property. Persons who purchased lots in good faith should not be deprived of what was considered a reasonable use at the time of purchase."

In State v. Callender, *supra,* in discussing the trial court's determination that front yard regulations were to apply to the area between the building and the road, rather than to the area between the building and the lake, we said:

"* * * This determination is completely contrary to the usage of the property by defendant and all others who own property in the subdivision, and it produces an absurd and invalid application of the zoning regulations." 293 Minn. 453, 197 N. W. 2d 217.

We hold that appellants' planned construction must meet the rear yard requirements of the zoning ordinance. This is consistent with the usage of the property by the vast majority of the owners and avoids a result which is absurd under the facts and circumstances of this case.

■ In determining where the setback line exists on appellants' property, the zoning ordinance is totally inconsistent. After examining the definitions of "rear yard," "depth of rear yard," "building setback line," "lot lines," and "setback" quoted above, we find these terms to be irreconcilable. If setback were involved, it could be measured from either the centerline of the road or the southerly edge of the road. However, we believe Section 19, General Regulations, subd. 7, para. 7c, disposes of this conflict. This regulation provides:

"In a RESIDENCE DISTRICT a detached accessory building not over one (1) story and not exceeding twelve (12) feet in height shall occupy not more than thirty (30) percent of the area of any rear yard, providing further that no detached accessory building shall be located within ten (10) feet of any rear lot line."

Since the garage appellants seek to build is a detached accessory building by definition under the ordinance, and since it is located more than 10 feet from their rear lot line, no variance is required, and they are entitled to the issuance of a building permit. We find no merit in the position of the commission approved by the lower court confining structures to a sight line determined by existing buildings, which produces a more stringent

setback requirement for appellants' rear yard than that provided by the ordinance.

Reversed and remanded with instructions that the lower court enter judgment ordering the issuance of a building permit to appellants for their proposed construction upon proper application by appellants.